## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SIPNOSE LTD.,             )
                        )
       Plaintiff,     )
                        )   Case Action No. _____
     v.              )
                        )   **JURY TRIAL DEMANDED**
APTARGROUP, INC.,    )
                        )
       Defendant.    )

## COMPLAINT

Plaintiff SipNose Ltd. ("SipNose" or "Plaintiff"), for its Complaint for Patent Infringement against AptarGroup, Inc. ("Aptar" or "Defendant") alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for infringement of U.S. Patent No. 11,116,914 ("the '914 patent" or the "patent-in-suit") arising under the United States Patent Laws, Title 35, United States Code § 100, *et seq.*, and in particular under § 271. SipNose seeks damages, injunctive relief, attorneys' fees, and any other relief the Court deems just and proper.

2.      This action arises out of Aptar's making, using, selling, offering to sell, and/or importing nasal drug delivery devices (the "Accused Products") that infringe the '914 patent.

### THE PARTIES

3.      Plaintiff SipNose Ltd. is a corporation organized and existing under the laws of Israel, having a principal place of business at 13 Hayetzira Street, Yokneam, Israel 2066720.

4.      Plaintiff SipNose Ltd. is engaged in intranasal drug delivery research and development, focused on developing innovative, non-invasive direct nose-to-brain drug delivery devices for treating a variety of disorders.

5.      Upon information and belief, defendant AptarGroup, Inc. is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 265 Exchange Drive, Suite 301, Crystal Lake, Illinois 60041.

6.      Upon information and belief, defendant AptarGroup, Inc. operates several reporting segments, one of which is referenced as Aptar Pharma. *See* AptarGroup, Inc. 10-K filing dated February 17, 2023.

7.      Upon information and belief, AptarGroup, Inc. and its reporting segment Aptar Pharma are in the business of, among other things, developing, preparing, manufacturing, selling, marketing, and distributing consumer dispensing packaging and drug delivery devices, including the Accused Products, throughout the United States, including the State of Delaware.

## JURISDICTION AND VENUE

8.      This is a civil action for infringement arising under the United States Patent Laws, including 35 U.S.C. § 271.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

10.     This Court has personal jurisdiction over AptarGroup, Inc. because, *inter alia*, AptarGroup, Inc., upon information and belief, (1) has substantial, continuous, and systematic contacts with the State of Delaware; (2) has marketed, sold, and/or distributed the Accused Products to the residents of the State of Delaware; (3) maintains a broad distribution network within the State of Delaware; and/or (4) enjoys substantial income from sales of its nasal drug delivery devices in the State of Delaware.

11.     Upon information and belief, AptarGroup, Inc. has purposely availed itself of this forum by making, using, importing, selling, or offering to sell nasal drug delivery devices in the State of Delaware, or causing others to do the same, and therefore can reasonably expect to be subject to jurisdiction in the Delaware courts.

12.     Upon information and believe, AptarGroup, Inc. has substantial, continuous, and systematic contacts with the State of Delaware including AptarGroup, Inc.'s engagement in the direct marketing, distribution, and/or sales of nasal delivery drug delivery devices within the State of Delaware.

13.     Venue is proper in this Judicial District as to AptarGroup, Inc. because, *inter alia*, AptarGroup, Inc. is a corporation organized and existing under the law of the State of Delaware and is subject to personal jurisdiction in this Judicial District.

## FACTUAL BACKGROUND

### Technology Background and SipNose's History

14.     The non-invasive intranasal cavity is an attractive route for drug administration due to easy access to a large mucosal surface. The physiological structure of the nasal cavity allows drugs to be efficiently absorbed and delivered to the target tissue either systemically and/or to the brain (through the direct nose-to-brain delivery route).

15.     SipNose is a leading innovator in nasal drug delivery devices specifically for consistently delivering aerosolized drug (liquids and/or dry powders, small and large molecules) into the nasal cavity, *e.g.*, to the upper area of the nasal cavity and the nasal epithelium, including the olfactory epithelium.

16.     SipNose's proprietary technology includes a jet, beam-like, aerosol nasal delivery platform that uses pressurized delivery and proprietary triggering mechanisms to enable delivery of drugs systemically and directly to the brain through the olfactory epithelium.

17.     SipNose has invested millions of dollars into research and development to develop its innovative nasal delivery technology. As a result of its history and dedication to innovation, SipNose has been awarded several patents in the United States, including the patent-in-suit.

**Patent-in-Suit**

18.      On September 14, 2021, the United States Patent and Trademark Office (the "USPTO") duly and lawfully issued U.S. Patent No. 11,116,914, entitled "Device and Method for Aerosolized Delivering of Substance to a Natural Orifice of the Body" and naming Daniel Shahaf, Iris Shichor, and David Napchi as inventors. A true and correct copy of the '914 patent is attached as Exhibit A.

19.      SipNose owns all rights, title, and interest in the '914 patent, including all rights to make, use, sell, offer for sale, and import products that practice the claims of the patent-in-suit. SipNose also owns the right to enforce and prosecute actions for infringement and to collect damages against infringers of the patent-in-suit. Defendants have no license or authorization to practice the technology of the patent-in-suit.

20.      The '914 patent is directed to the delivery of a predetermined volume/mass of a substance into the body cavity. The device includes: at least one predefined container that is sized and shaped to contain a predetermined volume/mass of the substance; a delivery end in fluid communication with the container; and at least one valve mechanically connected to the container and configurable between an active configuration in which the valve enables delivery of the volume/mass of the substance and an inactive configuration, in which the valve prevents delivery.

21.      The '914 patent has 38 claims: 5 independent claims and 33 dependent claims.

22.      The claims of the '914 patent, including claims 14 and 32, recite at least the inventive concepts of the '914 patent.

23.      Claim 14 of the '914 patent recites:

> 14. A device for delivering a predetermined mass $M_{sub}$ [mg] of at least one substance within at least one body cavity of a subject, said device comprising: at least one capsule sized and shaped for containing said predetermined mass $M_{sub}$ [mg] of said at least one substance; wherein said predetermined mass $M_{sub}$ [mg] is in a range of 1-1000 mg;

a nozzle configured for placement in proximity to said at least one body cavity, said nozzle being in fluid communication with said at least one capsule; said nozzle comprises at least one orifice, wherein a diameter D [mm] of the at least one orifice is in a range of 0.2-6 mm;

at least one valve mechanically connectable to said at least one capsule, characterized by at least two configurations: (i) an active configuration in which said at least one valve enables delivery of said predetermined mass $M_{sub}$ [mg] of said at least one substance from said at least one capsule to said at least one body cavity via said nozzle; and (ii) an inactive configuration, in which said at least one valve prevents delivery of said predetermined mass $M_{sub}$ [mg] of said at least one substance from said at least one capsule to said at least one body cavity,

said at least one valve is reconfigurable from said interactive configuration to said active configuration within a predetermined period of time, dT, in response to activation of said at least one valve; wherein said predetermined period of time dT is less than or equal to 200 ms; and

a fluid tight chamber configured to contain a predetermined volume $V_{gas}$ [ml] of pressurized gas at a predetermined pressure, $P_{gas}$ [barg]; wherein said predetermined volume $V_{gas}$ is in a range of 1-21 ml and said predetermined pressure $P_{gas}$ is in a range of 1-10 barg;

said pressurized gas, once said at least one valve is reconfigured from said inactive configuration to said active configuration, is configured to entrain said at least one substance and deliver said at least one substance via said at least one orifice in said nozzle within said at least one body cavity;

wherein said device is configured to deliver said predetermined mass $M_{sub}$ [mg] of said at least one substance and said predetermined volume $V_{gas}$ [ml] of said pressurized gas through said at least one orifice into said at least one body cavity, such that a release time of substantially the entirety of a predetermined volume $V_{sub}$ [ml] of said at least one substance and said predetermined volume $V_{gas}$ [ml] of said pressurized gas, $dT_{deliver}$, is less than 500ms,

wherein the $dT_{deliver}$ is maintained less than 500 milliseconds independent of the predetermined volume $V_{gas}$ [ml], the predetermined volume $V_{sub}$ [ml], and the predetermined pressure $P_{gas}$ [barg],

wherein a velocity of particles of the at least one substance, after exit from the device, is in a range of about 5 m/s to 50 m/s.

24.    Claim 32 of the '914 patent recites:

32. A method of delivering a predetermined mass $M_{sub}$ [mg] of at least one substance within at least one body cavity of a subject, comprising:
providing a device comprising:
at least one capsule sized and shaped for containing said predetermined mass $M_{sub}$ [mg] of said at least one substance; wherein said predetermined mass $M_{sub}$ [mg] is in a range of 1-1000 mg,

a nozzle in fluid communication with said at least one capsule; said nozzle comprising at least one orifice, wherein a diameter D [mm] of the at least one orifice is in a range of 0.2-6 mm,

at least one valve mechanically connected to said at least one capsule, characterized by at least two configurations: (i) an active configuration in which said at least one valve enables delivery of said predetermined mass $M_{sub}$ [mg] of said at least one substance from said at least one capsule to said at least one body cavity via said nozzle; and, (ii) an inactive configuration, in which said at least one valve prevents delivery of said predetermined mass $M_{sub}$ [mg] of said at least one substance from said at least one capsule to said at least one body cavity,

said at least one valve is reconfigurable from said inactive configuration to said active configuration, within a predetermined period of time, dT, in response to activation of said at least one valve; wherein said predetermined period of time dT is less than or equal to 200 ms, and

a fluid tight chamber adapted to contain predetermined volume $V_{gas}$ [ml] of pressurized gas at a predetermined pressure, $P_{gas}$ [barg]; wherein said predetermined volume $V_{gas}$ [ml] is in a range of 1-21 ml and said predetermined pressure $P_{gas}$ is in a range of 1-10 barg;

placing said nozzle in proximity to said at least one body cavity;

reconfiguring said at least one valve from said inactive configuration to said active configuration thereby entraining said at least one substance in said predetermined volume $V_{gas}$ [ml] of said pressurized gas; thereby

delivering said predetermined mass $M_{sub}$ [mg] of said at least one substance and said predetermined volume $V_{gas}$ [ml] of said pressurized gas through said at least one orifice in (a) a pressure rate of $dP_{gas}/dT$, (b) a volume rate of $dV_{gas}/dT$; and (c) a volume rate of $dV_{sub}/dT$; wherein said predetermined volume $V_{gas}$ [ml] of said pressurized gas at said predetermined pressure $P_{gas}$ [barg] is released from said fluid-tight chamber upon activation of said at least one valve, said predetermined volume $V_{gas}$ [ml] of said pressurized gas entrains said at least one substance, erupts via said at least one orifice into said at least one body cavity, such that a release time of substantially the entirety of a predetermined volume $V_{sub}$ [ml] of said at least one substances and said predetermined volume $V_{gas}$ [ml] of said pressurized gas, $dT_{deliver}$, is less than 500 ms, wherein the $dT_{deliver}$ is maintained less than 500 milliseconds independent of the predetermined volume $V_{gas}$ [ml], the predetermined volume $V_{sub}$ [ml], and the predetermined pressure $P_{gas}$ [barg]; and

characterizing a velocity of particles of the at least one substance, after exit from the device, as being in a range of about 5 m/s to 50 m/s.

## Aptar Background and Accused Products

25.     AptarGroup, Inc. is an international company that provides a range of dispensing, sealing, and active packaging solutions for the prescription drug and consumer health care markets.

26.     Amphastar Pharmaceuticals sells BAQSIMI, an injection-free glucagon product for treating severe low blood sugar in diabetes patients. *See* https://www.baqsimi.com/what-is-baqsimi/. BAQSIMI is sold as a pre-filled single-dose dispenser containing 30 mg of powder (including the fixed, 3 mg dose of a dry powder form of glucagon) and is intended to be administered inside the nose. *See* https://www.baqsimi.com/health-care-providers/adult/.



*See* https://www.baqsimi.com/.

27.     The single-dose dispenser used in BAQSIMI is manufactured by Aptar, *i.e.*, the Aptar Unidose (UDS) Powder Nasal Spray System ("Unidose Powder System") ("Accused Products"). *See* https://www.drugdeliverybusiness.com/eli-lilly-aptar-win-fda-approval-for-nasal-glucagon-powder/.



https://aptar.com/news-events/aptars-nasal-unidose-device-approved-by-us-fda-for-first-needle-free-rescue-treatment-for-severe-hypoglycemia/.

28. The Unidose Powder System is a single-use one-step nasal delivery device engineered to deliver a powder formulation into the nasal cavity of a person. As instructed by Aptar on its website: "Just insert in the nostril and depress the plunger style actuator to administer the single full dose." *See* https://aptar.com/products/pharmaceutical/unidose-nasal-powder-device-manufacturer/.

29. Upon information and belief, the Unidose Powder System is a commercial embodiment of the device described and claimed in U.S. Published Application 2023/0144040, assigned to Aptar France SAS. Upon information and belief, Figure 2 of U.S. Published Application 2023/0144040 depicts the Unidose Powder System:



30.     The Instructions for Use for BASQIMI include the following illustrations of use:



*See* https://www.baqsimi.com/safety-information/?section=pi#section-19.0.

31.     Aptar's Unidose Powder System has been approved for use by the United States Food and Drug Administration ("FDA") in connection with BAQSIMI. *See* https://www.drugdeliverybusiness.com/eli-lilly-aptar-win-fda-approval-for-nasal-glucagon-powder/.

32.     Upon information and belief, Aptar has engaged in activity that infringes the '914 patent within this Judicial District, including through at least the sale of Aptar's Unidose Powder System as used with BAQSIMI.  Discovery may show additional activities, products, and services,

including but not limited to other products sold by Aptar and/or its business partner(s) that infringe the '914 patent.

33.     Upon information and belief, Aptar has induced infringement of the '914 patent by intentionally encouraging, aiding and abetting acts of direct infringement of the '914 patent, including through at least the sale of Unidose Powder System for use with BAQSIMI, with knowledge of said patent and said infringement.

34.     Upon information and belief, Aptar has contributed to infringement of the '914 patent including through at least the sale of Unidose Powder System for use with BAQSIMI, knowing it is specifically made or adapted for use in infringing the '914 patent, with knowledge of the '914 patent and that there is no substantial non-infringing use.

35.     Aptar has made and continues to make extensive use of SipNose's patented technology, including the technology described and claimed in the '914 patent.  SipNose has suffered economic harm as a result of Aptar's infringing activities in an amount to be proven at trial and is entitled to the relief identified in its Request for Relief in this Complaint.

36.     Aptar has complied with the requirements of 35 U.S.C. § 287(a).

**Aptar's Knowledge of Infringement**

37.     Aptar has had knowledge of U.S. Patent Application No. 14,733,143 ("the '143 application"), which issued as the '914 patent, as early as October 2016. For example, SipNose previously disclosed the '143 application and its publication, US 2016/0129205, to Aptar in the context of IP-related discussions concerning a potential business collaboration between the parties.

38.     Thereafter, additional discussions and meetings occurred between SipNose and Aptar in the 2020 to 2022 timeframe, and at least as early as June 1, 2021, SipNose had notified Aptar of the notice of allowance issued for the '143 application.

39.     On August 17, 2023, SipNose notified Aptar that the Accused Products infringed the '914 patent. *See* Exhibit B. SipNose requested a response so that the parties could negotiate an amicable resolution.

40.     On October 23, 2023, after not receiving a substantive response from Aptar, SipNose sent a follow-up letter, again notifying Aptar of their infringement and requesting an amicable resolution. *See* Exhibit C.

41.     Aptar did not respond to the October 23, 2023 follow-up letter.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 11,116,914

42.     The allegations of each of the foregoing paragraphs 1-41 are incorporated by reference as though fully set forth herein.

43.     The allegations provided below are exemplary and without prejudice to SipNose's infringement contentions. In providing these allegations, SipNose does not convey or imply particular claim constructions or the precise scope of the claims. SipNose's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

44.     The '914 patent is presumed valid and enforceable.

45.     Upon information and belief, Aptar has made, used, offered for sale, sold and/or imported products, including within this Judicial District, including at least the Accused Products, that directly and indirectly infringe, either literally or under the doctrine of equivalents, one or more claims of the '914 patent in violation of 35 U.S.C. § 271(a), (b) and (c), including claims 14 and 32.

46.     Claim 14 of the '914 patent recites, in part "[a] device for delivering a predetermined mass $M_{sub}$ [mg] of at least one substance within at least one body cavity of a

subject."  As depicted below, the Unidose Powder System is a nasal powder dispenser device that is configured for delivering a fixed dose of powder into the nostril and nasal cavity of the user.



47.   Claim 14 of the '914 patent further recites "at least one capsule sized and shaped for containing said predetermined mass $M_{sub}$ [mg] of said at least one substance; wherein said predetermined mass $M_{sub}$ [mg] is in a range of 1-1000 mg."   As depicted below, the Unidose Powder System includes a container or reservoir (110) that is configured to contain and hold a fixed dose of powder.  As used in BAQSIMI, the Unidose Powder System is configured to contain and hold a fixed 30 mg dose of powder (3 mg of a powder form of glucagon).



48.     Claim 14 of the '914 patent further recites "a nozzle configured for placement in proximity to said at least one body cavity, said nozzle being in fluid communication with said at least one capsule; said nozzle comprises at least one orifice, wherein a diameter D [mm] of the at least one orifice is in a range of 0.2-6 mm." As depicted below, the Unidose Powder System has a nasal dispenser head (120) intended to be inserted into a user's nostril that is in fluid communication with the reservoir containing the powder.  The nasal dispenser head includes a dispenser orifice (121) through which the powder is dispensed.  Upon information and belief, the diameter of the dispenser orifice in the nasal dispenser head is in a range of 0.2-6 mm.



49.   Claim 14 of the '914 patent further recites "at least one valve mechanically connectable to said at least one capsule, characterized by at least two configurations: (i) an active configuration in which said at least one valve enables delivery of said predetermined mass $M_{sub}$ [mg] of said at least one substance from said at least one capsule to said at least one body cavity via said nozzle; and (ii) an inactive configuration, in which said at least one valve prevents delivery of said predetermined mass $M_{sub}$ [mg] of said at least one substance from said at least one capsule to said at least one body cavity." Upon information and belief, the Unidose Powder System employs an active configuration in which the device looks like:



and an inactive configuration in which the device looks like:



Upon information and belief, as depicted below, the reservoir in the Unidose Powder System is closed at one end by a closure element (112), and contains an insert (115) that slides during actuation to expel the closure element out from its closed position, allowing compressed air in the reservoir to drive the dose of powder out from the dispenser orifice.



50.     Claim 14 of the '914 patent further recites "said at least one valve is reconfigurable from said inactive configuration to said active configuration within a predetermined period of time, dT, in response to activation of said at least one valve; wherein said predetermined period of time dT is less than or equal to 200 ms."  Upon information and belief, the Unidose Powder System has a reaction time to open the valve of the device from its inactive configuration to the active configuration that is less than or equal to 200 ms.

51.     Claim 14 of the '914 patent further recites "a fluid tight chamber configured to contain a predetermined volume $V_{gas}$ [ml] of pressurized gas at a predetermined pressure, $P_{gas}$ [barg]; wherein said predetermined volume $V_{gas}$ is in a range of 1-21 ml and said predetermined $P_{gas}$ is in a range of 1-10 barg." Upon information and belief, the Unidose Powder System contains an air expelling mechanism with a fluid tight air chamber containing a volume of

compressed air within the range of 1-21 ml, wherein the pressure of the compressed air is in the range of 1-10 barg.

52.     Claim 14 of the '914 patent further recites "said pressurized gas, once said at least one valve is reconfigured from said inactive configuration to said active configuration, is configured to entrain said at least one substance and deliver said at least one substance via said at least one orifice in said nozzle within said at least one body cavity."  Upon information and belief, and as depicted below, when activated, the compressed air in the Unidose Powder System drives the dose of powder out of the reservoir through the dispenser orifice and into the nostril and nasal cavity of the user.



53.     Claim 14 of the '914 patent further recites "wherein said device is configured to deliver said predetermined mass $M_{sub}$ [mg] of said at least one substance and said predetermined volume $V_{gas}$ [ml] of said pressurized gas through said at least one orifice into said at least one body cavity, such that a release time of substantially the entirety of a predetermined volume $V_{sub}$ [ml] of said at least one substance and said predetermined volume $V_{gas}$ [ml] of said pressurized gas, $dT_{deliver}$, is less than 500ms."  Upon information and belief, the Unidose Powder System expels an aerosol containing the compressed air and the dose of powder through the dispenser orifice and into the nostril and nasal cavity of the user in a period of time that is less than 500 ms.

54.     Claim 14 of the '914 patent further recites "wherein the $dT_{deliver}$ is maintained less than 500 milliseconds independent of the predetermined volume $V_{gas}$ [ml], the predetermined volume $V_{sub}$ [ml], and the predetermined pressure $P_{gas}$ [barg]." Upon information and belief, the Unidose Powder System is configured to maintain an aerosol release time of less than 500 ms regardless of the amount of force applied by the user to activate the device.

55.     Claim 14 of the '914 patent further recites "wherein a velocity of particles of the at least one substance, after exit from the device, is in a range of about 5 m/s to 50 m/s." Upon information and belief, the Unidose Powder System expels the aerosol containing the compressed air and the dose of powder through the dispenser orifice and into the nostril and nasal cavity of the user at a speed in the range of about 5 m/s to 50 m/s.

56.     Claim 32 of the '914 patent recites "a method of delivering a predetermined mass $M_{sub}$ [mg] of at least one substance within at least one body cavity of a subject" through a device having generally the same characteristics as claimed in claim 14.  Accordingly, the allegations of each of the foregoing paragraphs 46-55 are incorporated by reference as though fully set forth herein.

57.     Claim 32 of the '914 patent further recites "placing said nozzle in proximity to said at least one body cavity" and "reconfiguring said at least one valve from said inactive configuration to said active configuration thereby entraining said at least one substance in said predetermined volume $V_{gas}$ [ml] of said pressurized gas; thereby delivering said predetermined mass $M_{sub}$ [mg] of said at least one substance and said predetermined volume $V_{gas}$ [ml] of said pressurized gas through said at least one orifice."

58.     Aptar encourages end users of the Unidose Powder System to infringe claim 32 of the '914 patent by providing instructions to "insert in the nostril and depress the plunger style

actuator         to         administer         the         single         full         dose." *See* https://aptar.com/products/pharmaceutical/unidose-nasal-powder-device-manufacturer/.         Upon information and belief, Aptar has sold the Unidose Powder System, at least for use with BAQSIMI, knowing it is specifically made or adapted for use in infringing the '914 patent, with knowledge of the '914 patent and that there is no substantial non-infringing use.

59.     Aptar will continue to infringe the '914 patent unless and until it is enjoined by this Court. Aptar, by way of its infringing activities, has caused and continues to cause SipNose to suffer damages in an amount to be determined, and has caused and is causing SipNose irreparable harm. SipNose has no adequate remedy at law against Aptar's acts of infringement and, unless Aptar is enjoined from its infringement of the '914 patent, SipNose will continue to suffer irreparable harm.

60.     Aptar had knowledge of and was aware of the '143 application that issued as the '914 patent at least as early as October 2016, and upon information and belief, had knowledge of the '914 patent as of its issuance date of September 14, 2021, but no later than at least August 17, 2023.  Thereafter, Aptar deliberately or intentionally infringed the '914 patent and is thus liable for willful infringement.

61.     SipNose is entitled to recover from Aptar damages at least in an amount adequate to compensate for its infringement of the '914 patent, in addition to enhanced damages under 35 U.S.C. § 284 for Aptar's willful infringement, which amount has yet to be determined, together with interest and costs fixed by the court.

## **JURY DEMAND**

Plaintiff SipNose requests a jury trial.

## **REQUEST FOR RELIEF**

WHEREFORE, SipNose respectfully requests the following relief:

A.      An adjudication that SipNose's rights in the '914 patent are valid and enforceable;

B.      A judgment on the Complaint in favor of SipNose and against Aptar;

C.      a judgment that Aptar has infringed, either literally and/or under the doctrine of equivalents, one of more claims of the '914 patent;

D.      a judgment that Aptar's infringement has been willful;

E.      the issuance of an injunction under 35 U.S.C. § 283, enjoining Aptar, its officers, agents, servants, employees, licensees, representatives, attorneys, and all other persons active or attempting to act in concert with it, from further acts of infringement of the patent-in-suit;

F.      an award of damages sustained as a result of Aptar's infringement of the Patent-in-Suit in an amount to be determined at trial provided under 35 U.S.C. § 284, including lost profits suffered by SipNose and/or in an amount not less than a reasonable royalty;

G.      an award of enhanced damages under 35 U.S.C. § 284 for Aptar's willful infringement;

H.      an accounting for infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

I.      an award of pre-judgment and post-judgment interest on the damages caused by Aptar's infringing activities and other conduct complained of herein;

J.      a finding that this is an exceptional case under 35 U.S.C. § 285;

K.      an award of reasonable attorneys' fees and costs incurred in connection with this action; and

L.      an award of any such other and further relief as the Court may deem just and proper.

ASHBY & GEDDES

/s/ Andrew C. Mayo

_____

*Of Counsel:*

Liane M. Peterson
Michael D. Kaminski
Molly Hayssen
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C., 20007
(202) 672-5300

Dated:  December 7, 2023

Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiff SipNose, Ltd.*